# United States Court of Appeals for the Federal Circuit

---

**CURTIS E. SMITH,**

*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2010-7145

---

Appeal from the United States Court of Appeals for Veterans Claims in 08-3702, Judge William P. Greene. Jr.

---

Decided: August 8, 2011

---

JAMES R. BARNEY, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for claimant-appellant. MARK R. LIPPMAN, The Veterans Law Group, of La Jolla, California, for claimant-appellant.

ERIC P. BRUSKIN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of coun-

sel on the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and AMANDA R. BLACKMON, Attorney, United States Department of Veterans Affairs, of Washington, DC.

--------

Before LINN, PLAGER, and DYK, *Circuit Judges*.

DYK, *Circuit Judge*.


Curtis E. Smith ("Smith") appeals a decision of the Court of Appeals for Veterans Claims ("Veterans Court") that denied him a rating of total disability based on individual unemployability ("TDIU"). Smith argued that the Veterans Administration ("VA") was required to obtain an industrial survey from a vocational expert to evaluate TDIU claims such as Smith's. The Veterans Court rejected this argument. We affirm.

## BACKGROUND

Smith served in active military duty for training from July 1972 to November 1972, active military duty from February 1975 to February 1979, and in the Army National Guard before and after his active service. While not serving in the military, Smith worked as a "laborer in a supply company and in the coal mines . . . for 13 years" and as a carpenter. J.A. 38. In January 1997, Smith filed a claim for entitlement to TDIU. TDIU provides a veteran with a total disability rating even where his disability rating is below 100% if the veteran is at least 60% disabled, meets other disability rating criteria, and is "unable to secure or follow a substantially gainful occupa-

tion as a result of service-connected disabilities."[1]   38 C.F.R. § 4.16(a).

In September 1998, the VA regional office denied Smith's TDIU claim. From 1998 to 2007, the Board of Veterans' Appeals ("Board") remanded Smith's claim to the VA for further development three times, and Smith underwent a total of five VA medical examinations. By 2007, Smith had a combined service-connected disability rating of 80% based on neck, back, cardiovascular, eye, and hearing disorders. Finally, in November 2007, the Board denied Smith's TDIU claim. The Board found that his 80% combined rating (with at least one disability rated at 40%) met the threshold requirements for a TDIU claim. *See* 38 C.F.R. § 4.16(a). However, taking into account Smith's work history, his educational background, and reports from VA medical examiners, the Board found that Smith's disabilities were not "so disabling as to prevent him from securing and maintaining all forms of substantially gainful employment consistent with a work background that would be consistent with either sedentary employment or certainly light manual labor." J.A. 35. The basis for this finding was, in significant part, the conclusions of the VA medical examiners.

While the medical examiners did not suggest that Smith could perform his previous employment as a laborer in the coal mines or a carpenter, they concluded that he was not prevented from performing other jobs. One examiner concluded, based in part on Smith's enrollment in business classes, that he would be capable of "[d]esk jobs" or other activities "similar to that of school-

---

[1]   A veteran who does not meet the disability rating thresholds may still be able to secure TDIU benefits under some circumstances if he is still "unable to secure or follow a substantially gainful employment as a result of service-connected disabilities." 38 C.F.R. § 4.16(b).

ing" that would not involve "heavy labor." J.A. 45. Another examiner stated that Smith "should be able to assume gainful employment doing most types of work which do not involve heavy lifting (above 20-30 pounds), excessive bending, or climbing. He would certainly be able to assume all types of sedentary and light work." J.A. 50–51. A third examiner determined that Smith's cardiovascular disorder would not prevent him from being gainfully employed. Lastly, a VA examiner found that Smith's eye disorder would only preclude him from jobs where excellent depth perception was required or double vision would be a serious risk (i.e., jobs involving driving or heavy equipment operation).

Smith appealed the Board's decision to the Veterans Court, which affirmed. The Veterans Court found that the Board's conclusion was not clearly erroneous. It also rejected Smith's argument that the Board did not take "his potential transferable occupational skills or educational background" into account. *Smith v. Shinseki*, No. 08-3702, slip op. at 3 (Vet. App. Aug. 11, 2010). Lastly, the Veterans Court held that the VA was not obligated to obtain an industrial survey from a vocational expert in order to evaluate whether Smith was employable in a job other than his former occupation (i.e., a job that did not involve heavy manual labor). Smith timely appealed, and we have jurisdiction pursuant to 38 U.S.C. § 7292.

## DISCUSSION

Under 38 U.S.C. § 7292(a) and (c), our review of decisions of the Veterans Court is limited to a "challenge to the validity of any statute or regulation or any interpretation thereof . . . ." Smith challenges the Veterans Court's interpretation of 38 U.S.C. § 5103A—the duty to assist statute.

The duty to assist statute provides that the VA "shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for [veterans] benefit[s]." *Id.* Smith argues that an industrial survey from a vocational expert (or its equivalent) is "necessary" in all TDIU cases in which "a veteran's service-connected disabilities prevent him . . . from performing the duties of his . . . prior employment" but where he may be able to "secure alternative employment." Appellant's Br. 11, 15. According to Smith, in this situation, only an industrial survey "can . . . tell us what jobs are available in the labor market [that are] compatible with the claimant's physical [and] mental limitations [and] educational and employment experience." Appellant's Br. 19. Although Smith fails to fully explain what an industrial survey entails, it apparently involves collecting job market data, comparing available jobs with an individual's skills and experience, and thereby enabling a vocational expert to determine "whether jobs are available, to which . . . [the] claimant can make a work adjustment, and the incidence of those jobs in the economy." Jon C. Dubin, *Overcoming Gridlock: Campbell After a Quarter-Century and Bureaucratically Rational Gap-filling in Mass Justice Adjudication in the Social Security Administration's Disability Programs*, 62 Admin. L. Rev. 937, 965 (2010).

This question whether the VA is obligated to supply a vocational expert as a matter of course in cases where the veteran cannot perform his old job is an issue of first impression. We agree with the Veterans Court that the statute does not require the VA to obtain such a survey in all cases in which a veteran is unable to return to his former occupation.

We note first that the statute includes no explicit reference to industrial surveys or vocational expert reports.

In contrast, the statute specifically requires the VA to obtain "[t]he claimant's medical records," "[a]ny [other] relevant records" identified by the claimant (including government records), and "a medical examination or . . . a medical opinion" when that examination or opinion is "necessary."   38 U.S.C. § 5103A(b)-(d).[2]   The explicit reference to medical expert reports without a reference to vocational expert reports provides evidence that Congress did not view such industrial surveys as "necessary."  Like the statute, nothing in the VA's regulation implementing the duty to assist statute explicitly requires the VA to obtain an industrial survey or consult non-medical experts even though the regulation identifies specific instances in which the duty to assist applies, including "obtaining records" and "providing medical examinations or obtaining medical opinions."[3]  38 C.F.R. § 3.159(c).

---

[2]   The statute also explicitly defines when such a medical examination is "necessary."  It is "necessary" if the record "contains competent evidence that the claimant has a current disability, or persistent or recurrent symptoms of disability;" and "indicates that the disability or symptoms may be associated with the claimant's active military, naval, or air service;" but "does not contain sufficient medical evidence for the Secretary to make a decision on the claim." *38 U.S.C.* § 5103A(d)(2).

[3]   So too a precedential VA general counsel opinion determined that in order to "require an employability assessment [from VA's vocational rehabilitation service] as a matter of generally applicable adjudication policy for determining a veteran's entitlement to [TDIU] . . . the Secretary must . . . first promulgate substantive regulations defining the scope, purpose and criteria for conducting such an assessment."  Precedential Opinion of the Office of Gen. Counsel for the Dep't of Veterans Affairs, No.  08-1994,  4–5  (Mar.  25,  1994), *available at* http://www.va.gov/ogc/docs/1994/Prc08-94.doc.   No such regulation has been promulgated.

Nevertheless, in and of itself, the failure of the statute or the regulation to specifically require the VA to provide an industrial survey from a vocational expert is not dispositive. The duty to assist statute could still require the VA to obtain an industrial survey if it were "necessary to substantiate" the veteran's claim. However, here, the administrative scheme makes it clear that such a survey is not "necessary" as a matter of course for TDIU claims of the type identified by Mr. Smith.

Smith's primary argument is that the VA must consider the availability of work in making a TDIU determination. The VA regulation governing TDIU claims includes no requirement that the agency consider the availability of work and makes no reference to vocational experts or industrial surveys. *See* 38 C.F.R. § 4.16. While the TDIU regulation requires that the veteran be capable of obtaining employment that would provide income "exceed[ing] . . . the poverty threshold for one person," it does not state that a particular job meeting this standard must exist in the national or local economy. *Id.* § 4.16(a). The VA's Adjudication Procedures Manual (published by VA in order to provide guidance to its adjudicators) explicitly states that the "availability of work" is an "extraneous factor" that is irrelevant to the TDIU determination. VA Adjudication Procedures Manual Rewrite M21-1MR, Part IV, Subpart ii, Chapter 2, Section F, 2-F-12.

We have previously held that VA interpretations of its own regulations in its Adjudication Procedures Manual are "controlling" as long as they are not "plainly erroneous or inconsistent with the regulation." *Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). We thus defer to this interpretation of the TDIU regulation, which is consistent with the Veterans Court's standard. That standard does not require a showing that jobs exist in sufficient num-

bers in the economy. *See, e.g.*, *Van Hoose v. Brown*, 4 Vet. App. 361, 363 (1993) ("The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the veteran is *capable* of performing the physical and mental acts required by employment, not whether the veteran can find employment.").

Given that a TDIU determination does not require any analysis of the actual opportunities available in the job market, we decline to conclude that an industrial survey is "necessary" for that purpose in connection with TDIU claims. Because job market information is not required, the duty to assist does not require the VA to provide such information through an industrial survey.[4]

To support his contrary interpretation, Smith relies on cases involving Social Security Administration ("SSA") disability determinations. These cases held that, at least in some circumstances, the SSA was required to provide vocational expert testimony or similar evidence. *See, e.g.*, *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986). However, the SSA scheme differs significantly from the VA's approach. The SSA regulations expressly provide that "any other work [besides your former occupation] that you can adjust to must exist in significant numbers in the national economy" and that "[SSA is] responsible

---

[4]    *See Rizzo v. Shinseki*, 580 F.3d 1288, 1292 (Fed. Cir. 2009) (holding that the duty to assist does not require the VA to provide affirmative evidence as to the competence of a VA examiner "because VA does not require a claimant such as Mr. Rizzo to provide any evidence that would establish the competence of a VA examiner in order to substantiate a claim for benefits").

for providing evidence that demonstrates that other work exists in significant numbers in the national economy that you can do, given your residual functional capacity . . . ." 20 C.F.R. § 404.1560(c). The SSA regulations also specifically envision that "[SSA] may use the services of a vocational expert or other specialist," *id.* § 404.1566(d), and a 1983 Social Security precedential ruling determined that, in some cases, "the assistance of a vocational resource may be necessary." SSR 83-14: Titles II and XVI: Capability To Do Other Work (1983), *available at* http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR 83-14-di-02.html.

Smith argues that, quite apart from determining the availability of work, a vocational expert may be necessary to determine whether a veteran is qualified in education and experience for the type of job that he is medically fit to perform. He notes that the regulation provides that "employment history, [and] educational and vocational attainment" of the veteran are relevant to a TDIU claim. 38 C.F.R. § 4.16(b). At the same time, the duty to assist statute provides that "[n]othing . . . shall be construed as precluding the Secretary from providing such other assistance . . . to a claimant in substantiating a claim as the Secretary considers appropriate." 38 U.S.C. § 5103A(g). At oral argument, the government agreed that the statute provided the VA with the discretion to offer additional assistance in the form of a vocational expert when the VA concluded that it was necessary. Thus, the VA agrees that a vocational expert could be "necessary" under the facts of a particular case (if, for example, the veteran were found medically qualified for a particular type of job, but there was an unusually difficult question as to whether the veteran had the educational or vocational skills for the position).

But the relevance of education and experience or the fact that such an expert is sometimes necessary does not suggest that a vocational expert is *always* required for this purpose, and we hold that such an expert is not invariably required. We note in particular that Smith's counsel at oral argument "concede[d]" that "there has to be some discretion [with] the [VA]" in determining "when and where" such evidence is necessary, Oral Arg. at 10:44–11:03, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 10-7145.mp3.

Smith appears to argue that the VA should have found that an expert was necessary for this purpose in this case. Even if the question of whether a vocational expert was necessary in this case were within our jurisdiction—a question on which we express no opinion—we could not conclude on these facts that the VA abused its discretion in declining to provide a vocational expert.

## AFFIRMED

### COSTS

No costs.