http://www.va.gov/vetapp16/Files6/1644953.txt

Citation Nr: 1644953 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 10-03 497 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in North Little Rock, Arkansas

THE ISSUE

Entitlement to an effective date prior to December 19, 2009, for the grant of entitlement to a total disability rating based on individual unemployability (TDIU).

REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney at Law

ATTORNEY FOR THE BOARD

C. J. Houbeck, Counsel

INTRODUCTION

The Veteran performed active duty for training (ACDUTRA) from October 1986 to February 1987 and active military service from November 1987 to September 1988. He also performed other ACDUTRA and inactive duty training (INACDUTRA) at various times. 

This appeal arises to the Board of Veterans' Appeals (Board) from an April 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in North Little Rock, Arkansas.

The Veteran's claims were remanded for additional development and/or consideration in September 2011. 

Multiple requests for a hearing before a member of the Board are of record, but in a September 2013 statement the Veteran's representative indicated that all hearing requests before the Board were withdrawn.

The Board denied the Veteran's claim in a July 2014 decision, which the Veteran appealed to the United States Court of Appeals for Veterans Claims (Court). In an October 2015 Memorandum Decision the Court vacated the Board's decision with respect to the above-listed issue and remanded the claim for further consideration.

Additional evidence was submitted by the Veteran following the above Memorandum Decision. In an August 2016 statement, the Veteran's representative specifically waived consideration of this evidence by the agency or original jurisdiction (AOJ) in the first instance. To the extent that additional evidence has been associated with the record since the last AOJ adjudication of the claim, the Board finds that such evidence is not relevant to the question of assigning an effective date prior to December 2009, as such evidence addresses only the Veteran's condition at various times after that date. As such, a remand for consideration of such evidence is not required.

This appeal was processed using the Veteran's Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. Accordingly, any future consideration of the Veteran's case should take into consideration the existence of these electronic records.

FINDINGS OF FACT

1. The Veteran is presently service-connected for major depressive disorder, evaluated as 70 percent disabling from February 3, 2000, and degenerative changes to the thoracic spine, evaluated as 40 percent disabling from January 5, 2004. The combined disability rating is 80 percent from January 5, 2004. 

2. The preponderance of the evidence is against finding that the Veteran was unable to secure or maintain gainful employment as a result of service-connected disabilities prior to December 19, 2009.

CONCLUSION OF LAW

The criteria for entitlement to an effective date prior to December 19, 2009, for the grant of TDIU have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 3.400, 4.16(a) (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Board initially wishes to make it clear that it is aware of the Court's instructions in Fletcher v. Derwinski, 1 Vet. App. 394, 397 (1991), to the effect that a remand by the Court is not "merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104 (d)(1). A remand is meant to entail a critical examination of the justification for the decision." The Board's analysis has been undertaken with Fletcher in mind.

Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

In this case, the claim is a "downstream" issue in that it arose from the initial grant of entitlement to TDIU. Prior to the rating decision granting entitlement to TDIU, the RO issued a notice letter in December 2009 that fully satisfied the duty to notify provisions. Moreover, in an August 2016 statement the Veteran's representative specifically waived any notice errors on VA's part.

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. Private records have been associated with the claims file, to the extent possible. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim. 

With respect to claims for increased ratings, the duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the Veteran. See Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the Veteran's disability, a VA examination must be conducted. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2013).

The RO provided the Veteran numerous VA examinations, most recently in June 2013. The VA examination reports are thorough and supported by the other treatment evidence of record. The examination reports discussed the clinical findings and the Veteran's reported history as necessary to rate the disability under the applicable rating criteria. The examination reports also discussed the impact of the disabilities on the Veteran's daily living. Based on the examinations, the absence of evidence of worsening symptomatology since the examinations, and the fact there is no rule as to how current an examination must be, the Board concludes the examination reports in this case is adequate upon which to base a decision as to the issue on appeal. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

Based on the readjudication of the Veteran's TDIU claim, along with the additional development undertaken, the Board finds that there has been substantial compliance with its prior remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand instructions, and imposes upon the VA a concomitant duty to ensure compliance with the terms of the remand); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Earlier Effective Date for TDIU

The Board notes that VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the Veteran is precluded, by reason of service-connected disabilities, from obtaining and maintaining any form of gainful employment consistent with his or her education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16. Under the applicable regulations, benefits based on individual unemployability are granted only when it is established that the service-connected disabilities are so severe, standing alone, as to prevent the retaining of gainful employment. Under 38 C.F.R. § 4.16, if there is only one such disability, it must be rated at least 60 percent disabling to qualify for benefits based on individual unemployability. If there are two or more such disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a).

For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable; (2) Disabilities resulting from common etiology or a single accident; (3) Disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric; (4) Multiple injuries incurred in action; or (5) Multiple disabilities incurred as a prisoner of war. Id.

As noted above, the Veteran was granted entitlement to TDIU in an April 2010 rating decision. A notice of disagreement (NOD) was submitted in May 2010 with respect to the effective date assigned. In June 2010, a statement of the case (SOC) was issued with respect to this issue. The Veteran submitted a substantive appeal in July 2010. The Veteran claims that an earlier effective date, prior to December 19, 2009, should be assigned for the grant of entitlement to TDIU. Specifically, the Veteran contends that the effective date for the grant of entitlement to TDIU should be at least January 5, 2004.

Of note, a September 2011 Board determination granted an earlier effective date of June 19, 1997, for the grant of entitlement to service connection for depression. Thereafter, the Board remanded the issue of entitlement to an earlier effective date for the grant of TDIU, which appears to reflect the view that the Veteran's initial claim for service connection for depression (or some later point in time) implicitly contained an attempt to obtain an appropriate rating for his disabilities as part of the initial adjudication of the claim, and that a TDIU could be awarded for some time period prior to the formal claim of December 2009, as recognized by the RO. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). As noted above, the Veteran's representative has since clarified the issue to be one for a grant of entitlement to TDIU from at least January 5, 2004.

There are several possible bases for an earlier effective date for a TDIU. The grant of TDIU is an award of increased disability compensation for purposes of assigning an effective date. Dalton v. Nicholson, 21 Vet. App. 23 (2007); Wood v. Derwinski, 1 Vet. App. 367, 369 (1991). The assignment of effective dates for increased evaluations is governed by 38 U.S.C.A. § 5110 and 38 C.F.R. § 3.400.

The Court and VA General Counsel have interpreted the laws and regulations pertaining to the effective date for an increase as follows: If the increase occurred within one year prior to the claim, the increase is effective as of the date the increase was "factually ascertainable." If the increase occurred more than one year prior to the claim, the increase is effective the date of claim. If the increase occurred after the date of claim, the effective date is the date of increase. 38 U.S.C.A. § 5110(b)(2); Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. § 3.400(o)(1)(2); VAOPGCPREC 12-98 (1998). In addition, it is possible that the claims file could contain a communication or action indicating an intent to apply for one or more benefits under the laws administered by VA, including a report of VA examination or hospitalization, which could be considered an informal claim. See 38 C.F.R. §§ 3.155(a), 3.157. 

Moreover, the regulation providing for a TDIU on a schedular basis uses the term "ratable" when indicating the appropriate ratings, suggesting that eligibility for an earlier effective date for a TDIU could be established by showing that a service- connected disability was, at a prior time, ratable at a higher level than it was actually rated. See 38 C.F.R. § 4.16(a). Such a scenario is present in the instant case. Entitlement to TDIU was denied in a September 2006 rating decision on the basis that the Veteran did not meet the schedular requirements for TDIU. Following the grant of an earlier effective date for the Veteran's service-connected major depressive disorder, the RO assigned a 30 percent rating prior to February 3, 2000, and 70 percent from February 3, 2000. Thus, the Veteran clearly met the schedular requirements for TDIU for the period from January 5, 2004, from which the Veteran's attorney claims that a TDIU is warranted. See 38 C.F.R. § 4.16. 

As such, in order to receive a total disability rating under § 4.16(a) prior to January 5, 2004, it must be determined that the Veteran's service-connected disabilities rendered him unemployable as of some prior date without regard to any impairment caused by nonservice-connected disabilities. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough; the ultimate question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether he can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993).

The Veteran was afforded a VA psychology assessment in February 1999. The Veteran indicated that he had been fired from his last job due to alcohol-related lateness. He stated that other jobs had ended because they were seasonal in nature or because he got bored with the job. The Veteran reported one physical fight in the previous 5 years. He denied any problems with anxiety or depression, but did acknowledge some paranoid thinking. The assessment was adjustment disorder, not otherwise specified, and alcohol and cocaine abuse. Possible work fields included forklift driver, cashier, and housekeeper.

The Veteran's April 1999 discharge document indicated Axis I diagnoses of adjustment disorder, not otherwise specified, and alcohol, cocaine, and tobacco abuse (in remission, other than the tobacco). An Axis II diagnosis was adult antisocial behavior. The GAF score was observed to be 55, both on hospital admission and on discharge.

In January 2000, the Veteran reported experiencing violent nightmares the past 2 years. He experienced symptoms of depression, sleep problems, lack of enjoyment in spending time with friends, low energy, decreased concentration, loss of interest, crying spells, anxiety, and increased irritability. On examination, the Veteran had good hygiene, was cooperative, had good eye contact, full and appropriate affect, disappointed mood, logical speech, no hallucination/delusions, fully oriented, and fair insight. He denied suicidal or homicidal ideation. The diagnosis was major depressive disorder, single, severe, without psychosis and his GAF score was 60.

In February 2000, the Veteran reported no change in his mood since the last appointment. He continued to have disturbed sleep, decreased interest, poor energy, poor concentration, and poor appetite. He denied suicidal or homicidal ideation. Examination was similar to that undertaken in January 2000. 

Later in February 2000, the Veteran was easily startled and had few activities. He denied suicidal or homicidal ideation, but stated that he had wanted to kill someone. 

In January 2003, the Veteran was discharged from an outpatient treatment program following a positive alcohol Breathalyzer. He was noted to have problems with anger control and appropriate socialization. He had had difficulty interacting socially both with his peers and staff members. At the time of discharge, the Veteran was performing at an employable level.

In February 2003, the Veteran again was hospitalized for alcohol dependence and cocaine dependence. He also had an Axis II diagnosis of antisocial personality disorder. His GAF was 21 at admittance, 31 at discharge, and a high GAF of 81 earlier that year. The Veteran reported hearing voices and visual hallucinations that had occurred earlier in life and had reoccurred the previous 2 months. He reported avoidance behavior, paranoid thoughts, and concentration problems. He also described depression and nightmares. He denied suicidal or homicidal ideation. He denied a decreased desire to do things. 

In December 2003, the Veteran again was hospitalized for substance abuse and assigned a GAF score of 21. The Veteran had anger management problems and difficulty dealing with stress. 

In February 2004, the Veteran underwent a VA examination for his thoracic spine. He stated that he was unemployed and spent most of his time at some friends watching television because he could not do "much of anything." He had increased pain with all activities. He had problems with sitting for more than 30 minutes, bending, and lifting more than 25 pounds. 

In March 2004, the Veteran's GAF score was 35. He was diagnosed with posttraumatic stress disorder (PTSD) and substance abuse in early remission. He described being involved in church and that his strong religious faith was sustaining him. The Veteran was working daily from 10 p.m. to 7 a.m. 

The Veteran was hospitalized for substance dependence in August 2004. His GAF score at discharge was 45. On examination, he had a broad affect, was dressed appropriately, and had normal speech and thought processes. There was a history of auditory or visual hallucinations, but they were not frequent. The Veteran claimed to be able to tell the difference between reality and fantasy. 

In September 2004, the Veteran stated that he had been working at Walmart for the previous 8 months. He reported symptoms that were similar to his previous problems. The diagnoses were depression, major, partial remission, and PTSD. 

During a January 2006 Board hearing for a PTSD claim, the Veteran discussed his psychiatric symptoms, which included nightmares, anger problems, anxiety, depression, and mood swings. As to his back problems, the Veteran indicated that he would be unable to perform work that involved distance walking, heavy lifting, or extended sitting. 

The Veteran was afforded a spine examination in September 2006. The examiner indicated that the Veteran was significantly limited, as he was unable to perform repetitive motion testing of the spine. The Veteran was able to work, but missed about half the time due to back problems. 

In September 2006, the Veteran reported that he would still fish, but had a general loss of interest in activities. His speech was normal in rate and content, but had poor insight and judgment. He denied suicidal and homicidal ideation. He reported sleep problems, irritability, and concentration problems. 

In November 2006, the Veteran was seen for his antisocial personality disorder. The treatment provider noted that the Veteran was involved in a residential rehabilitation treatment program (RRTP). He indicated that he was trying to get a job and work on his anger and depression. He also reported anxiety and paranoia. He denied suicidal ideation. The treatment provider assigned a GAF score of 50. 

The Veteran graduated from the RRTP in December 2006 after successful completion of the program. He had full-time stable employment at a restaurant and had established his own residence. He had been working at the restaurant on a full-time basis since late July 2006, as a cook. 

In February 2007, the Veteran reported that his strengths included, "loving, hard worker, honest, caring, spiritual" and that his weaknesses were, "boredom, stress." The Veteran was currently unemployed and had left his prior job as a cook in a restaurant due to the stress of alcohol and drug use on the premises. 

The Veteran was afforded a psychiatric examination in June 2007. He reported irritability due to pain in his right leg and a short temper, even though he was "an outgoing person. I talk to everybody." He had sleep problems due to pain and nightmares. He was depressed most of the time. He used to enjoy fishing, but had not gone in the past few years. He stated that he was more interested in companionship than sex. He reported homicidal ideation, but no immediate intent. He was working part time and had worked full time 3 years previously as a general contractor. He had attended 3 semesters of school at a community college, maintaining a 3.0 average. He wanted to start back in school to study nursing. When not working he sat at home and watched television, otherwise he did nothing. On examination, the Veteran was casually groomed, fully cooperative, and quite affable. Speech was somewhat pressured. Thought processes were normal and there was no evidence of confusion. Memory was grossly intact and the Veteran was fully oriented. Insight was somewhat limited. He denied suicidal ideation. The examiner concluded that there was no evidence of current PTSD or depressive disorder. The GAF score was 45. The Veteran had evidence of a mood disorder, which seemed to be substance related. He might have a nightmare disorder, but it was mild in nature. There was no noted impairment of social functioning or impairment of thought processing or communication noted. There was no evidence of other psychiatric disorder, other than a possible personality disorder. 

The Veteran was afforded a spine examination in September 2007. He had last worked one year previously and had stopped because it required too much standing. On examination, there was evidence the Veteran was amplifying his symptoms throughout much of the examination, as he was able to get into and out of a chair without difficulty when not being examined. He walked with a normal gait, but cried out in pain and reported discomfort on every attempted motion testing. The examiner indicated that the Veteran would be limited in activities involving repetitive bending, lifting, standing, squatting, or running. He had a gain in range of motion on repetitive testing.

The Veteran was afforded a psychiatric examination in September 2008. He reported ongoing depression and nightmares. He denied enjoyment of any activities and decreased libido. He reported both suicidal and homicidal ideation, but denied any intent as to either. He reported that he had last worked 2 and a half years previously and had been fired after 5 weeks for an altercation with a fellow employee in which the Veteran had tried to burn the other employee. He currently was attending a technical college, with middling to poor grades. He generally would not do much during the day, but would occasionally go for a drive or talk with people who were fishing. He claimed to visit only with his mother. On examination, the Veteran did not display any evidence of depression, but there was considerable anger. Speech was normal and affect appropriate. Thought processes and memory were intact and without evidence of confusion. He did not report hallucinations and there was no evidence of delusions. Insight was limited. The diagnosis was depressive disorder, no otherwise specified, and the examiner assigned a GAF score of 55. The examiner indicated that some problems were due to depression secondary to the Veteran's service-connected back disability; however, functioning was complicated by non-service connected Axis II problems. The GAF score was based solely on the depression, which the examiner termed as fairly mild in nature. There was no evidence that the depression in and of itself precluded employment or the performance of activities of daily living. 

In October 2008, the Veteran was continuing in school, but was missing a lot of classes and his grades were dropping. He denied suicidal ideation, but thought that his depression was worse. In January 2009, the Veteran stated that he had started a new semester at school and was hoping it would go better than the previous semester.

In November 2009, the Veteran reported that he had "lots of friends" and that his friends were supportive of his sobriety. He preferred interacting with small groups of friends, rather than a large group. He reported ongoing depression and indicated that a past history of suicidal ideation lasted for only a short time. He denied any current suicidal or homicidal ideation. He reported having a good relationship with his siblings, but that his relationship with his mother was "artificial" because she was in denial about the Veteran's troubled childhood. The Veteran reported that his strengths were, "helping people, sharing information with people, open[ing] up to others, trusting, and car[ing] about others." The Veteran stated that there were numerous activities in which he enjoyed doing. His favorite activity was fishing, but he also enjoyed darts, shuffle board, bike riding, weight lifting, card games, and board games. The Veteran's faith played an important role in his life, but he did not regularly attend church. 

In his December 2009 VA Form 21-8940, "VETERAN'S APPLICATION FOR INCREASED COMPENSATION BASED ON UNEMPLOYABILITY," the Veteran reported that he had worked for about a year in 1990 as a cook at Red Lobster, for about 3 months in 1994 as a cook for Olive Garden, for about 5 months in 2004 as a custodian for Walmart, and for about 4 months in 2006 and 2007 as a cook for Juanita's Bar & Grill. He claimed to have worked about 20 hours per week at Juanita's and lost 3 days due to illness. He had worked 35 hours per week at Walmart and lost 6 days due to illness. In a subsequently filed VA Form 21-4192, the Veteran indicated that he had worked at Juanita's from July 2006 to November 2006 and had earned $2,416.56.

The Veteran was afforded a spine examination in March 2010. His back pain and radiating symptoms were aggravated by sitting for over an hour or walking 400 to 500 yards. The Veteran appeared to exaggerate his symptoms slightly on examination, but his back problems would likely prevent any type of physical work involving lifting or significant standing, bending, or walking. He also would have difficulty with sedentary employment that would involve prolonged sitting. 

He also was afforded a psychiatric examination in March 2010. The Veteran reported increased anger problems. He lived with his mother, brother, and brother's girlfriend, but would stay in his room unless he had to go to the VA. His brothers would sometimes visit and try to get him to go somewhere with them, but he would generally decline. The examiner noted the contradiction in the November 2009 evaluation, in which the Veteran reported having lots of friends who were supportive of him. He described frequent crying episodes. He last worked 2 years previously as a cook in a restaurant, but had left after 2 months and "I left because I didn't want to kill them." The Veteran described becoming highly agitated by the actions of his co-workers. Prior to the job as a cook, he had worked at Walmart for 5 months, but was terminated after an altercation with a co-worker. On examination, the Veteran was casually groomed, cooperative, had good eye contact, normal thought processes, was fully oriented, had no evidence of delusions or hallucinations, but had poor insight and judgment. He described both suicidal and homicidal ideation, but without plan or intent as to each. The diagnosis was depressive disorder, not otherwise specified, with a GAF score of 61.

In support of his claim, the Veteran provided a March 2010 private Vocational Assessment. The examining consultant discussed the Veteran's employment and medical histories. The Veteran reported that he had been living with his mother for the previous 4 months and denied having been married or having children, although the consultant noted that the file indicated that the Veteran did have a daughter. The consultant also discussed inconsistencies as to the Veteran's reports of having served in the Navy, whereas he actually served in the Army. He reported recurrent nightmares, suicidal/homicidal thoughts, daily episodes of crying, and anger at the event and treatment by his providers thereafter. The consultant observed that the Veteran's primary disabilities were low back and psychiatric disorders with symptoms including sleep deprivation, nightmares, anger, difficulty with social situations, chronic back pain, and limited ambulation ability. As a result of these symptoms, the Veteran was unable to secure or follow substantially gainful employment from November 2004. Currently he lived a very sheltered existence, with little socializing or physical activity. The part-time employment after 2004 did not provide income over the poverty level. The consultant indicated that he was aware of diagnoses of psychiatric conditions other than his service-connected condition, but "it is impossible to determine which psychiatric symptoms are attributable to the service-connected depression and which psychiatric symptoms are attributable to his non service connected conditions." As such, it was clear to the consultant that the Veteran was unable to secure or follow a substantially gainful occupation due to his psychiatric conditions as a whole and his service-connected thoracic spine condition.

In a July 2010 statement, the Veteran's representative argued that an effective date for TDIU of December 5, 2007, was warranted, as this was the effective date of his service-connected depression.

The Veteran was afforded a VA examination in June 2012. The examiner noted review of the claims file. The examiner noted a diagnosis of depressive disorder, not otherwise specified, and a GAF score of 48. The examiner indicated that the assigned GAF score was based on the Veteran's service-connected depression and did not take into account his non-service connected personality disorder. The examiner indicated that the Veteran psychiatric symptoms resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The Veteran indicated that he had lived with his girlfriend on and off for the previous 3 years. Currently he was living with her and her 9-year old son. He had never been married, but had 6 children. He typically did not have friends, with the exception of his brother. He indicated that he "does not do anything anymore." The Veteran did acknowledge, however, that he did engage in some yard work. The Veteran reported that in the past he had shot 4 people, with the intention of killing them. The Veteran's symptoms included depressed mood, anxiety, irritability, chronic sleep impairment, difficulty in establishing and maintaining effective work and social relationships, and inability to establish and maintain effective relationships. 

The June 2012 VA examiner also provided a separate medical opinion in June 2012. The examiner noted review of the claims file. She noted that the Veteran had received multiple conflicting diagnoses over the previous 14 years. After interviewing the Veteran and reviewing the records, the opinion provider concluded that the only diagnosis that could be substantiated was depressive disorder secondary to a back injury. His non-service connected personality disorder was a significantly confounding factor in his evaluation. In addition, records alluded to suspicion of malingering or misrepresentation on the Veteran's part. During the current interview, the Veteran had been somewhat inconsistent in the information presented. There was no evidence of a current psychotic disorder and the opinion provider noted that the time periods when a psychotic disorder was documented in the records corresponded to periods of substance abuse and diagnosed substance-induced mood disorder. The Veteran's depression contributed to his long history of problems with anger, aggression, and interacting with others. His problems with anger would make sustaining employment difficult and he would need to be employed in a setting where he would not have to interact with others.

In a July 2012 addendum, a VA psychologist who had co-signed the June 2012 VA medical opinion stated that the symptoms associated with the service-connected depression disability were depressed mood, anxiety, sleep impairment, and some social withdrawal. "Any other symptoms reported by the veteran as noted in [the June 2012 VA examination report] are believed to be encompassed by non-service connected problems, such as his personality disorder and substance dependence. The gaf that was provided was based on his symptoms of depression impacting his social functioning, work functioning, and ability to cope. Symptoms of depression do not preclude the veteran from being able to work. He has problem-solving skill, and he may be best suited for work-tasks that do not involve significant stress or responsibilities."

In March 2013, the Veteran reported that he had recently moved out of the apartment that he had been sharing with his latest girlfriend. The treatment provider encouraged him to identify what he was looking for in a mate and write down the desired qualities, as well as what he offered as a mate. In April 2013, the Veteran reported that his psychiatric symptoms were worsening. In June 2013, the Veteran's GAF score was 61.

The Veteran was afforded another VA psychiatric examination in June 2013. The examiner noted a diagnosis of depression not otherwise specified and a GAF score of 65. The examiner indicated that the Veteran psychiatric symptoms resulted in occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by medication. The examiner noted review of the claims file. The Veteran was in a 2-year long relationship. They had met through family members. They did argue at times. He spent his spare time fishing and at home. The Veteran stated that he had last worked 8 years ago and had been fired for not following his supervisor's orders. The Veteran reported depression 4 to 5 days out of the week, due to his limited activities and abilities as a result of his service-connected back problems. He denied suicidal ideation. The Veteran's symptoms included depressed mood, but no other noted problems. 

A June 2013 aid and attendance examination indicated that the Veteran could perform all activities of daily living. He used a cane for ambulation and could walk between a half mile and one mile. In another portion of the examination, however, the examiner stated that the Veteran could walk the length of one football field carrying a gallon of milk. He could stand for short periods of time and could drive himself to appointments without assistance, but was unable to bend or squat. 

A June 2013 VA spine examination indicated that the Veteran could walk the length of a football field, stand for 5 minutes, sit for 20 minutes, and lift a gallon of milk. He claimed to be unable to do yard work, manual labor requiring lifting, activities involving extended standing, or bending or squatting activities. Sedentary work was unaffected, as long as the Veteran was able to reposition himself. 

In support of his claim, the Veteran submitted a statement from his then girlfriend that he had been depressed for the three years she had known him. Sometimes, the Veteran would go fishing or shoot pool, but most of the time he would sit in his room with the television off and the door closed. He did not like company or intimate relationships. 

The Veteran again sought in-patient treatment for substance abuse in November 2013. At the time of admission, his GAF score was 21, although the score was attributed solely to Axis I diagnoses of substance abuse and not to a service-connected psychiatric disorder. The Veteran reported that in 2011 he had moved in with a female, with problematic consequences for his sobriety. He also indicated that his strengths included that he was a "people person" and that he enjoyed helping others.

In a December 2013 statement, the Veteran's representative argued that the opinion of the March 2010 vocational expert was competent and more probative than the opinions of the non-vocational experts with respect to the Veteran's unemployability.

Following the above-referenced Memorandum Decision, the Veteran submitted a July 2016 Employability Evaluation in support of his claim. The Veteran was noted to have been unavailable for an interview and the evaluation was based on the information contained in the claims file. The evaluator stated, "In review of the file it is evident that by 2003 [the Veteran] was having significant depressive symptoms including disruptive sleep accompanied by nightmares, decreased interest in pleasurable activities, low energy, difficulty with concentration, decreased appetite, irritable and argumentative behaviors, anxiety and fear of losing control. In regards to symptoms from back pain it is documented in September of 2006 that [the Veteran] was missing half his time at work due to pain in the back, which causes limited mobility." The evaluator discussed multiple treatment records and other evidence included in the claims file. The evaluator indicated that the claims file illustrated that the Veteran, "has worked primarily as short order cook and a dishwasher, continually losing or quitting jobs due to chronic absenteeism, argumentative and aggressive behaviors, and fear of killing his coworkers." The evaluator concurred with the conclusions of the March 2010 vocational assessment that, "it is difficult to separate the symptoms of the [V]eteran's major depressive disorder from the symptoms of his non-service connected psychiatric conditions included posttraumatic stress disorder, schizophrenia, substance abuse and personality disorder. Because of the overlap of his various psychiatric symptoms and the totality of his vocational picture as outlined above, it is clear that he is unable to secure or follow a substantial gainful occupation since 2004 due to his service-connected disabilities." The rationale for that conclusion included the fact that the Veteran had held numerous jobs over the years, but had been unable to maintain employment for any length of time, and that the symptoms of his service-connected disabilities, "would not be tolerated in a competitive environment. Aggressive behaviors alone would be reason for immediate termination, and chronic absenteeism as noted in the file would be well above the average based on Department of Labor statistics. These psychological symptoms in and of themselves would preclude competitive employment." In support of that assertion, the evaluator cited to the July 2012 VA psychiatric examination report that noted symptoms of depressed mood, anxiety, sleep impairment and social withdrawal, as well as difficulty in establishing and maintaining effective work and social relationships and irritability. These problems would make it extremely difficult to work alongside others without conflict and completing work tasks in a timely manner would be difficult due to concentration problems.

Moreover, the evaluator found that the Veteran "would have no transferable skills to sedentary work based on his vocational history and, given his extensive psychological symptoms, he could not even perform sedentary unskilled work." The evaluator noted that sedentary work involved lifting, carrying, or pulling up to 10 pounds occasionally or a negligible weight frequently, as well as up to an occasional amount of standing or walking. 

The evaluator ultimately concluded that, "Based on all of the above it is my professional opinion that it is more likely than not [the Veteran] has been unable to secure and follow substantial gainful employment since 2004 because of his service-connected disabilities. Given the progression of the record it is quite likely with a reasonable degree of certainty that this unemployability dated back to the time of his discharge from the service."

The ultimate question at issue in this case is whether the Veteran's service-connected disabilities, alone, rendered him incapable of securing or maintaining substantially gainful employment prior to December 19, 2009. Based on consideration of the entire claims file, the Board concludes they did not.

In this case, the greater weight of evidence demonstrates that the Veteran's service-connected major depressive disorder and back disability did not preclude the Veteran from securing or following a gainful occupation for the period prior to December 19, 2009. As discussed above, numerous VA medical examination reports have concluded that for the period prior to December 19, 2009, the Veteran's back disability would make it extremely difficult for him to perform any physical job that required significant lifting, bending, standing, or other such activities. That said, the Veteran would be able to perform in a work setting that was generally sedentary in nature, as long as the Veteran would be able to adjust his positioning as necessary. The Veteran's service-connected major depression disorder, for the period prior to December 19, 2009, would make working in a situation involving interaction with others extremely difficult. That said, the Veteran would be able to perform in an environment with low stress and where he could generally work alone.

The evidence of record is contradictory as to the Veteran's employment status for several periods after January 5, 2004. In September 2004, he indicated that he had been working for 8 months at Walmart. A subsequent March 2010 record claimed that he worked at Walmart for 5 months. He appears to have been terminated after an altercation with another employee. In December 2006, the Veteran was noted to have been working full time since July 2006 as a cook. In February 2007, the Veteran indicated that he had left employment as a cook because of the stress of the alcohol and drug use on the premises. In March 2010, however, he claimed to have worked as a cook for only 2 months and to have left because he did not want to kill his co-workers. In June 2007, the Veteran stated that 3 years previously he had worked full time as a general contractor. The record also indicates that the Veteran attended a technical school in 2008. Otherwise, the Veteran appears to have been unemployed, or generally unemployed, from January 2004. 

The Board has considered the March 2010 private Vocational Assessment that concluded that the Veteran's psychiatric and back disabilities precluded the Veteran from securing or following a course of gainful employment from January 5, 2004. The consultant indicated that he was unable to separate the Veteran's service-connected depressive disorder symptoms from his non-service connected psychiatric disorder symptoms. As such, he considered all the symptoms with respect to the Veteran's employability. As noted above, multiple medical professionals have been able to separate the Veteran's symptoms by disorder and have considered the effects that only the service-connected depressive disorder symptoms would have on the Veteran's ability to secure and follow a course of gainful employment. These medical professionals have universally concluded that the service-connected symptoms alone would not preclude employment. Although such opinions are not determinative as to the issue, the Board will consider such opinions in making an ultimate conclusion as to the Veteran's employability. As the March 2010 Vocational Assessment considered both the Veteran's service-connected and non-service connected psychiatric symptoms in rendering an opinion on employability, the Board ultimately finds the 2012 and 2013 VA medical opinions of greater probative weight. Although the Board recognizes that such opinions were rendered outside of the appellate time period, they were based on consideration of the record that included the Veteran's condition and symptoms during the period prior to December 19, 2009. 

The Board finds the July 2016 Employability Evaluation of limited probative value for the same reasons as the March 2010 Vocational Assessment. The July 2016 evaluator specifically stated that she agreed with the March 2010 evaluator that it was "difficult to separate the symptoms of the [V]eteran's major depressive disorder from the symptoms of his non-service connected psychiatric conditions included posttraumatic stress disorder, schizophrenia, substance abuse and personality disorder. Because of the overlap of his various psychiatric symptoms and the totality of his vocational picture as outlined above, it is clear that he is unable to secure or follow a substantial gainful occupation since 2004 due to his service-connected disabilities." Thus, as with the March 2010 Vocational Assessment, it is clear that the conclusions reached in the July 2016 Employability Evaluation were based on a combination of the Veteran's service-connected and non-service connected disabilities. Although the July 2016 evaluation purports to conclude that the service-connected disabilities rendered the Veteran unable to secure and follow substantial gainful employment from 2004 (and likely from service separation), the above statement clearly demonstrates that the opinion was based on a combination of service-connected and non-service connected disabilities. As such, the Board finds the conclusions outweighed by the 2012 and 2013 VA medical opinions that were based solely on the Veteran's service-connected disabilities.

Even were the Board to afford the 2012 and 2013 VA psychiatric opinions no probative weight, the Veteran's claim still would fail. As detailed in the facts section above, the Veteran stated on multiple occasions that he was able to fish, although at times he was uninterested in the activity, which indicates that he was physically able to perform sedentary activities for an extended period of time. In addition, the Veteran stated that he enjoyed playing board games, which reflects a similar ability to perform sedentary activities, including sedentary activities that required some degree of concentration. Contemporaneous records indicate that the Veteran left his last significant job, as a cook, not because of an inability to physically or psychologically perform the duties of the job. Rather, the record indicates that he was concerned about the alcohol and drug use by those at the restaurant, which was a significant stress to his continued sobriety. Finally, there is no medical evidence of record that any medical professional recommended that the Veteran stop working permanently due to any combination of the disabilities for which service connection was in effect prior to December 2009. Thus, the Veteran's contemporaneous statements indicate that he was able to perform a job with generally sedentary duties and, indeed, left a more physically demanding job as a cook not because he could not perform the activities of the job, but because he was concerned about the extracurricular activities of his co-workers. 

In reaching the above conclusions, the Board has considered the holding of the October 2015 Court Memorandum Decision, which found that the prior Board determination failed to provide adequate reasons and bases for its conclusion that the Veteran's service-connected disabilities alone did not demonstrate his inability to secure or maintain substantially gainful employment. Specifically, the Memorandum Decision indicated that the Board, "completely failed to explain how, and in fact appears to presume that, 'generally sedentary' work requiring repositioning, that is low stress, and that the appellant can perform alone amounts to substantially gainful employment. The Board also made no attempt to consider such restrictions on employment in light of the appellant's work history and educational background. The fact that the appellant may be physically able to perform some form of 'generally sedentary' work, no matter how the appellant, the Secretary, or the Board defines 'sedentary' or 'generally sedentary,' does not mean that he is educationally and vocationally qualified to perform such employment." The Court further noted the argument of the Veteran's representative that the Veteran's high school education; limited college education; and experience as a cook, dishwasher, custodian, and laborer rendered him unqualified for any employment that remained possible given his service-connected disabilities. The Court required additional reasons and bases as to how the "sedentary employment with further restrictions" that the Veteran was capable of performing prior to December 19, 2009, could amount to substantially gainful employment, particularly in light of the Veteran's education and employment experience.

The Board notes that substantially gainful employment is defined as work that is more than marginal and that permits the individual to earn a living wage. Moore v. Derwinski, 1 Vet. App. 356 (1991). In Faust v. West, 13 Vet. App. 342 (2000), the Court defined substantially gainful employment as "an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that the Veteran actually works and without regard to the Veteran's earned annual income." Under VA Adjudication Procedure Manual, M21-1, Part VI, paragraph 7.09(a)(7), "substantially gainful employment," is defined as "that which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the Veteran resides." 

In this case, the Veteran's past work experience and educational background would have permitted employment in numerous work environments prior to December 19, 2009, despite the limitations imposed as a result of his service-connected disabilities. The Board notes that the Court had previously held that "a TDIU determination does not require any analysis of the actual opportunities available in the job market." Pederson v. McDonald, 27 Vet. App. 276, 287 (2015) (en banc) (quoting Smith v. Shinseki, 647 F.3d 1380, 1385 (Fed. Cir. 2011)). The Memorandum Decision, however, appears to require the Board to engage in just such analysis. As such, the Board has considered several job opportunities that would have comported with the Veteran's educational background, work history, and limitations due to his service-connected disabilities. Generally, given the Veteran's problems interacting with others during the applicable time period prior to December 19, 2009, a job involving work in a relatively solitary involvement would have been necessary, such as third shift work accomplished at night in order to minimize interaction with others. Some examples of such job opportunities that would be generally sedentary in nature, but involving lower levels of stress, the ability to adjust his positioning as necessary, and the ability to work alone for the vast majority of time might include security guard, emergency on call custodian, and surveillance system monitor. These types of positions could utilize the Veteran's past work experience and skills, yet meet the restrictions due to his service-connected disabilities. Such examples would not be an exhaustive list, but are meant to provide an example that for the period prior to December 19, 2009, there were available positions that could have provided substantially gainful employment, particularly in light of the Veteran's education and employment experience. The Veteran's military experience and work as a custodian would have provided the experience necessary to qualify for such employment. As the Veteran was capable of performing the duties of various specific types of employment, the Board finds that prior to December 19, 2009, his limitation to "sedentary employment with further restrictions" amounted to substantially gainful employment in light of the Veteran's education and employment experience.

Based on the foregoing, the Board finds that the greater weight of probative evidence is against assigning an effective date for TDIU earlier than December 19, 2009. The evidence of record establishes that prior to December 19, 2009, at best, the Veteran's service-connected disabilities may have contributed to his unemployment. There is no persuasive evidence of record, however, suggesting that the Veteran's service-connected disabilities alone prevented him from obtaining or maintaining employment prior to December 19, 2009. Indeed, as noted, there is significant evidence of record to the contrary. 

The Board is cognizant of the Veteran's sincere belief in the merits of his claim, but it places less weight or probative value on the Veteran's current statements concerning the relationship between his service-connected and nonservice-connected disabilities and his ability to maintain employment, made in pursuit of his claim for compensation benefits, than it does on the objective medical evidence of record and his contemporaneous statements made for medical treatment purposes. While the Board does not wish to minimize the nature and extent of the Veteran's overall disability during this period, the most probative evidence of record does not support the Veteran's claim that his service-connected disabilities prevented him from securing and maintaining substantially gainful employment during this period, without regard to his age or nonservice-connected disabilities.

In sum, for the reasons and bases set forth above, the Board finds that an effective date prior to December 19, 2009, for the grant of a TDIU is not warranted.

ORDER

Entitlement to an effective date prior to December 19, 2009, for the grant of entitlement to TDIU is denied.

____________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs