Citation Nr: 1829618 
Decision Date: 06/27/18 Archive Date: 07/02/18

DOCKET NO. 12-30 114 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to an increased disability rating for the service-connected right shoulder disability, in excess of 60 percent from October 1, 2016 to April 11, 2017.

2. Entitlement to a total disability rating based in individual unemployability due to service-connected disabilities (TDIU) from October 1, 2016 to April 11, 2017. 


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney 


WITNESSES AT HEARING ON APPEAL

The Veteran and spouse


ATTORNEY FOR THE BOARD

A. Tenney, Associate Counsel 


INTRODUCTION

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California. 

The Veteran testified at a Board videoconference hearing before the undersigned Veterans Law Judge in April 2016. The hearing transcript has been associated with the claims file.

The Veteran reported that he underwent total right shoulder replacement on July 28, 2015. See April 2016 Board hearing transcript. As such, the June 2016 Board decision, in pertinent part, bifurcated and remanded the issue of an increased rating for the right shoulder disability, for the period from July 28, 2015, in order to provide the Veteran with a favorable decision for the earlier periods and to afford the Veteran the opportunity to provide additional evidence and argument. See Tyrues v. Shinseki, 23 Vet. App. 166, 176 (2009) (noting that it is permissible for VA to bifurcate a claim for service connection based on different theories) (en banc) aff'd 631 F.3d 1380 (Fed. Cir. 2011), vacated on other grounds, 132 S. Ct. 75 (2012); Roebuck v. Nicholson, 20 Vet. App. 307, 315 (2006) (acknowledging that VA can bifurcate a claim and address different theories or arguments in separate decisions). The June 2016 Board decision also remanded the TDIU issue on appeal pursuant to Rice v. Shinseki, 22 Vet. App. 447 (2009). The matter has been properly returned to the Board for appellate consideration. See Stegall v. West, 
11 Vet. App. 268 (1998).

A September 2017 rating decision reflects that the Veteran is in receipt of both a temporary total (100 percent) rating following right shoulder surgery, as well as a 100 percent ("total") schedular rating for the service-connected disabilities for the periods from July 28, 2015 to October 1, 2016, and from April 11, 2017 to June 1, 2018. See 38 C.F.R. § 4.30 (2017). Because the Veteran is in receipt of a 100 percent rating for the right shoulder disability due to convalescence, as well as a TDIU for the periods from July 28, 2015 to October 1, 2016, and from April 11, 2017 to June 1, 2018, the Board need only address the period from October 1, 2016 to April 11, 2017. The Board need not address any period beginning on June 1, 2018 (a future period of time). 


FINDINGS OF FACT

1. For the period from October 1, 2016 to April 11, 2017, the service-connected right shoulder disability did not manifest as prosthetic replacement of the shoulder joint for one year following implantation of prosthesis or loss of humerus head (flail shoulder) in the right (major) upper extremity. 

2. For the period from October 1, 2016 to April 11, 2017, the Veteran is not rendered unable to obtain (secure) or maintain (follow) substantially gainful employment as a result of service-connected disabilities. 


CONCLUSIONS OF LAW

1. For the period from October 1, 2016 to April 11, 2017, the criteria for an increased disability rating in excess of 60 percent for the service-connected right shoulder disability have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 
5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5051, 5200-5203 (2017).

2. For the period from October 1, 2016 to April 11, 2017, the criteria for TDIU have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. 
§§ 3.102, 3.340, 3.341, 4.15, 4.16, 4.18, 4.19 (2017). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist 

The Veterans Claims Assistance Act of 2000 (VCAA) enhanced VA's duty to notify and assist claimants in substantiating their claims for VA benefits. 
38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (2012); 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159, 3.326(a) (2017). 

In a claim for increased rating, the VCAA requirement is generic notice, that is, the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment and earning capacity, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 
580 F.3d 1270 (2009). With regard to the issue of increased rating for the right shoulder disability, the RO issued a July 2009 preadjudicatory notice letter to the Veteran, which met the VCAA notice requirements. Further, in June 2016, VA issued the Veteran a VCAA notice which informed of the evidence generally needed to support a TDIU what actions needed to be undertaken, and how VA would assist in developing the claim. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). A TDIU is form of increased rating. See Hurd v. West, 13 Vet. App. 449 (2000) (recognizing that a TDIU claim was a form of increased rating claim by applying increased rating effective date regulatory provisions to a TDIU claim); Norris v. West, 12 Vet. App. 413 (1999) (recognizing that a claim for a TDIU is in essence a claim for an increased rating); Parker v. Brown, 7 Vet. App. 116, 118 (1994) (stating that a TDIU claim is an alternate way to obtain a total disability rating without recourse to a 100 percent rating under the rating schedule).

With regard to the duty to assist, VA has made reasonable efforts to obtain relevant records and evidence with respect to the issues adjudicated herein. Specifically, the information and evidence that has been associated with the claims file includes the service treatment records, post-service VA and private treatment records, Social Security Administration (SSA) records, relevant VA examination reports, the April 2016 Board hearing transcript, and the Veteran's written statements.

VA examined the right shoulder in September 2016 and March 2017. The Board finds that the above-referenced examination reports are adequate for VA rating purposes because it was written after an interview with the Veteran, examination, and contains findings regarding the severity of the right shoulder disability supported by clinical data. See generally Barr v. Nicholson, 21 Vet. App. 303, 
311 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

Based on the foregoing, the Board finds that all relevant facts have been properly and sufficiently developed in this appeal, and no further development is required to comply with the duty to assist in developing the facts pertinent to the appeal. In view of the foregoing, the Board will proceed with appellate review.

Increased Rating for Right Shoulder Disability 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 
38 U.S.C. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2017). 

Where there is a question as to which of two disability ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 
38 C.F.R. § 4.7. It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 
38 C.F.R. § 4.25 (2017). Pyramiding, the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14 (2017). It is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

When rating disabilities of the musculoskeletal system, 38 C.F.R. § 4.40 allows for consideration of functional loss due to pain and weakness causing additional disability beyond that reflected on range of motion measurements. DeLuca v. Brown, 8 Vet. App. 202 (1995). Further, 38 C.F.R. § 4.45 provides that consideration also be given to decreased movement, weakened movement, excess fatigability, incoordination, and pain on movement, swelling, and deformity or atrophy of disuse. Painful motion is considered limited motion at the point that pain actually sets in. See VAOPGCPREC 9-98.

With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification. Sciatic neuritis is not uncommonly caused by arthritis of the spine. The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. 38 C.F.R. § 4.59.

The Veteran contends generally that an increased rating in excess of 60 percent is warranted for the service-connected right shoulder disability due to such symptoms as pain, weakness, and instability. See September 2016, March 2017 VA examination reports. 

Disorders of the shoulders are rated under Diagnostic Code (DC) 5200 through DC 5203 of 38 C.F.R. § 4.71a. The above-referenced diagnostic codes provide for different ratings in certain instances depending on whether the shoulder involved is the major or minor joint. The record reflects that the Veteran is right hand dominant. See, e.g., March 2017 VA examination report. As the Veteran is right hand dominant, the Board will consider the disability ratings for the major joint. Shoulder flexion is measured from 0 degrees to 180 degrees; abduction is measured from 0 degrees to 180 degrees. 38 C.F.R. § 4.71a, Plate I. 

In this case, DC 5200, which pertains to ankylosis of the scapulohumeral articulation (Note: the scapula and the humerus move as one piece), is inapplicable as no higher rating than 50 percent is provided. 38 C.F.R. § 4.71a. DC 5201, which pertains to limitation of motion of the arm, is also inapplicable as no higher rating that 40 percent is provided. 38 C.F.R. § 4.71a. In addition, DC 5203, which pertains to impairment of the clavicle or scapula, does not apply as no higher rating that 20 percent is provided. 38 C.F.R. § 4.71a.

Under DC 5202, which pertains to impairment of the humerus, in pertinent part, a 60 percent disability rating is warranted when there is nonunion of the humerus (false flail joint) in the major upper extremity; and a maximum disability rating of 80 percent is warranted when there is loss of humerus head (flail shoulder) in the major upper extremity. 38 C.F.R. § 4.71a.

The Veteran is in receipt of a 60 percent disability rating for the right shoulder disability under DC 5051. Under DC 5051, a 60 percent disability rating is assigned for prosthetic replacement of the shoulder joint with chronic residuals consisting of severe, painful motion for weakness in the affected extremity. A 100 percent disability rating is assigned for prosthetic replacement of the shoulder joint for one year following implantation of prosthesis. 

After a review of all the evidence, lay and medical, the Board finds that, for the entire period on appeal from October 1, 2016 to April 11, 2017, the service-connected right shoulder disability has not been manifested by loss of humerus head (flail shoulder) in the major upper extremity or prosthetic replacement of the shoulder joint for one year following implantation of prosthesis. The most relevant evidence are the September 2016 and March 2017 VA examination reports and various VA treatment records, which reflect the right shoulder disability manifested as objective evidence of painful motion, weakness, and instability, which include the Veteran's reports of right shoulder symptoms and functional impairment, including flare-ups. 

Specifically, findings from the September 2016 and March 2017 VA examinations, and history and findings in the numerous VA treatment records reflecting treatment for the right shoulder, as well as the Veteran's self-reported symptoms, are consistent with a 60 percent rating under DC 5051 for the symptoms and level of impairment actually demonstrated by the right shoulder disability. Diagnostic Code 5051 warrants a 60 percent rating for prosthetic replacement of the shoulder joint with chronic residuals consisting of severe, painful motion for weakness in the affected extremity. In this case, the September 2016 VA examiner assessed pain on flexion, abduction, and bilateral rotation, as well as tenderness or pain on palpation of the anterior shoulder joint. In assessing repeated-use overtime, the September 2016 VA examiner noted that pain and weakness would result in addition limitation of motion. 

The March 2017 VA examination report reflects the Veteran reported moderate to severe pain related to July 2015 right shoulder replacement surgery. The March 2017 VA examiner assessed weakness and painful motion that caused functional loss to flexion, abduction, and bilateral rotation. The March 2017 VA examiner also noted that the Veteran would undergo "reverse right shoulder replacement" surgery in approximately one month. See 38 C.F.R. § 4.71a, Diagnostic Code 5051 (assigning a 60 percent rating, for prosthetic replacement of the shoulder joint with chronic residuals consisting of severe, painful motion for weakness in the affected extremity). Under DC 5051, a higher 100 percent disability rating would only be warranted for prosthetic replacement of the shoulder joint for one year following implantation of prosthesis, which, in this case, is inapplicable as the Veteran underwent right shoulder replacement surgery on July 28, 2015. 

Additionally, under DC 5202, a higher 80 percent rating for the shoulder disability would only be warranted for loss of humerus head (flail shoulder) in the major upper extremity. 38 C.F.R. § 4.71a. In this case, neither the September 2016 VA examiner nor the March 2017 VA examiner discerned loss of humerus head (flail shoulder) in the right (major) upper extremity. See September 2016, March 2017 VA examination reports. As such, a higher rating under DC 5202 is not warranted. 38 C.F.R. § 4.71a, Diagnostic Code 5202. 

Additionally, the Board has considered whether there is additional functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40, 4.45, and 4.59. See also DeLuca. In this case, however, a separate rating under DC 5201 for limitation of motion would compensate the Veteran twice for the same symptoms including pain, limitation of motion due to pain, and functional impairment, violating the anti-pyramiding provisions of 38 C.F.R. § 4.14. 

Specifically, while the March 2017 VA examiner assessed that range of motion testing was unable to be performed due to right shoulder symptoms, including pain and weakness, the Veteran is already in receipt of 60 percent rating under DC 5051, which is higher than the 40 percent rating available under DC 5201 when motion is limited to 25 degrees from the side. 38 C.F.R. § 4.71a. In this case, it would be pyramiding (38 C.F.R. § 438 C.F.R. § 4.14) to assign a separate rating under Diagnostic Code 5201 for limitation of elevation of the right shoulder that results in symptoms of dislocation, pain, and weakness as these symptoms are based in part on joint rating (Deluca) factors, which are fully contemplated under Diagnostic Code 5051 as severe, painful motion or weakness of the right shoulder. Further, and as discussed above, the Veteran is already in receipt of a 60 percent rating under DC 5051, which is higher the 
40 percent (maximum) disability rating available under DC 5201. As such, the Veteran does not have any separately identifiable residual symptoms or functional impairment due to the right shoulder disability that is not already compensated by the 60 percent rating under Diagnostic Code 5051 that would warrant additional compensation. 38 C.F.R. § 4.71a, DeLuca. 

Separate Rating for Right Shoulder Scar 

The Board has also considered whether assignment of a separate rating under any other of the applicable diagnostic codes is appropriate as to the right shoulder disability. A September 2017 rating decision granted service connection for right shoulder surgery scars and assigned a zero percent rating, effective July 28, 2015. As the Veteran did not disagree with the effective date or rating assigned for the scars, the issue is not currently before the Board. 

Extraschedular Referral Consideration

The Board had also considered whether referral for an extraschedular rating is warranted for the service-connected right shoulder disability. Ratings shall be based as far as practicable upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular ratings are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extraschedular rating commensurate with the average earning capacity impairment due exclusively to the service connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1).

The Court has clarified that there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. Initially, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. See Doucette v. Shulkin, 28 Vet. App. 366 (2017) (holding that either the veteran must assert that a schedular rating is inadequate or the evidence must present exceptional or unusual circumstances). Second, if the schedular rating does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to 
determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. Thun v. Peake, 22 Vet. App. 111 (2008). However, the Board gives no deference to the Director's adjudication and the Board is permitted to exercise jurisdiction over the question of entitlement to an extraschedular rating whether or not the Director of the Compensation and Pension Service finds an extraschedular rating warranted. See Kuppamala v. McDonald, 
27 Vet. App. 447 (2015) (applying principles announced in Wages to 38 C.F.R. 
§ 3.321(b) extraschedular adjudication, namely, Director of C&P decision is not evidence, and is not a policy decision, but is simply a decision or adjudication that is adopted by the RO and reviewed de novo by the Board). 

With respect to the first prong of Thun, the Board finds that all the symptomatology and impairment caused by the right shoulder disability has been specifically contemplated by (and compensated for) under DC 5051. The schedular rating criteria contemplate the Veteran's right shoulder disability and the symptoms associated with such right shoulder disability, including limitation of motion and impairment of function, including due to pain, instability, and weakness. The schedular rating criteria pertaining to the Veteran's right shoulder disability provide for ratings based on limitation of motion, including due to pain and other orthopedic (DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59) factors such as weakness, incoordination, and fatigability. See Schafrath v. Derwinski, 1 Vet. App. 589, 
594 (1991) (read together with schedular rating criteria, 38 C.F.R. §§ 4.40 and 4.45 recognize functional loss due to pain); Deluca at 206-07 (1995) (functional limitations are applied to the schedular rating criteria to ascertain whether a higher schedular rating can be assigned based on limitation of motion due to pain and during flare-ups, and should be expressed in schedular rating terms of degree of range-of-motion loss); Burton v. Shinseki, 25 Vet. App. 1, 4 (2011) (the majority of 38 C.F.R. § 4.59, which is a schedular consideration, provides guidance for noting, evaluating, and rating joint pain); Sowers v. McDonald, 27 Vet. App. 472, 480 (2016) (38 C.F.R. § 4.59 is limited by the diagnostic code applicable to the claimant's disability, and is read in conjunction with, and subject to, the relevant diagnostic code); Mitchell v. Shinseki, 25 Vet. App. 32, 33-36 (2011) (pain alone does not constitute functional impairment under VA regulations, and the rating schedule contains several provisions, such as 38 C.F.R. §§ 4.40, 4.45, 4.59, that address functional loss in the musculoskeletal system as a result of pain and other orthopedic factors when applied to schedular rating criteria). 

In this case, the right shoulder disability has been manifested by painful motion of the right shoulder, weakness, dislocation, and instability; these findings and symptoms are contemplated by the 60 percent schedular rating under Diagnostic Code 5051. To the extent that the Veteran has right shoulder weakness, the symptom of weakness limits shoulder motion, so is similar to painful motion, as it similarly limits motion; such limitation of right shoulder motion has also been considered in assigning the 60 percent schedular rating. Similarly, to the extent that right shoulder disability has been manifested by right shoulder pain or limitation of motion, this symptom has been considered under limitation of motion due to pain, weakness, incoordination, or fatigability, and flare-ups of pain, which are incorporated into the schedular rating criteria. See id. All the symptomatology and impairment caused by the right shoulder disability has been specifically contemplated by the 60 percent disability rating under Diagnostic Code 5051, to include the symptoms associated with such disability including limitation of motion and impairment of function; therefore, the Board finds that the record does not reflect that the right shoulder disability is so exceptional or unusual as to warrant referral for consideration of the assignment of a higher rating on an extraschedular basis.


TDIU 

TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue will be addressed in both instances. 38 C.F.R. § 4.16(a), (b).

If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

If a veteran's disabilities do not meet the objective combined rating percentage criteria of 38 C.F.R. § 4.16(a), it then becomes necessary to consider whether the criteria for referral for extraschedular consideration are met under § 4.16(b) criteria. It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Submission to the Director of Compensation and Pension Service, for extraschedular consideration is warranted in all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in § 4.16(a). 38 C.F.R. § 4.16(b).
Individual unemployability must be determined without regard to any non-service-connected disabilities or a veteran's advancing age. 38 C.F.R. 
§§ 3.341(a), 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a veteran is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether a veteran is capable of performing the physical and mental acts required by employment, not whether a veteran can find employment. Id. at 361. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in a veteran's favor. 38 C.F.R. 
§ 4.3. 

In Faust v. West, 13 Vet. App. 342 (2000), the Court defined "substantially gainful employment" as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that a veteran actually works and without regard to a veteran's earned annual income. In Hatlestad v. Derwinski, 5 Vet. App. 524, 529 (1993), the Court held that the central inquiry in determining whether a veteran is entitled to a TDIU is whether a veteran's service-connected disabilities alone are of sufficient severity to produce unemployability. The determination as to whether a total disability is appropriate should not be based solely upon demonstrated difficulty in obtaining employment in one particular field, which could also potentially be due to external bases such as economic factors, but rather to all reasonably available sources of employment under the circumstances. See Ferraro v. Derwinski, 1 Vet. App. 326, 331-332 (1991). In evaluating a veteran's employability, consideration may be given to the level of education, special training, and previous work experience in arriving at a conclusion, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

Marginal employment is not considered substantially gainful employment and generally is deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist in certain cases when earned annual income exceeds the poverty threshold on a facts-found basis. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). Marginal employment, odd-job employment, and employment at half the usual remuneration is not incompatible with a determination of unemployability if the restriction to securing or retaining better employment is due to disability. 38 C.F.R. § 4.17(a) (2017).

The ultimate issue of whether a TDIU should be awarded is not a medical issue, but rather is a determination for the adjudicator. See Moore v. Nicholson, 21 Vet. App. 211, 218 (2007) (ultimate question of whether a veteran is capable of substantial gainful employment is not a medical one; that determination is for the adjudicator), rev'd on other grounds sub nom, Moore v. Shinseki, 555 F.3d 1369 (Fed. Cir. 2009). Although VA must give full consideration, per 38 C.F.R. § 4.15, to "the effect of combinations of disability," VA regulations place responsibility for the ultimate TDIU determination on VA, not a medical examiner's opinion. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013); 38 C.F.R. § 4.16(a); see also Smith v. Shinseki, 647 F.3d 1380, 1385-86 (Fed. Cir. 2011) (VA is not required to obtain an industrial survey from a vocational expert before making a TDIU determination but may choose to do so in an appropriate case).

For the period from October 1, 2016 to April 11, 2017, the Veteran has two service-connected disabilities: the right shoulder disability, rated 60 percent disabling, and a right shoulder residual surgical scar, rated at 0 percent disabling. For purposes of determining eligibility for consideration of TDIU, the right shoulder disability and the right shoulder residual surgical scar disability forms a "common etiology"; therefore, both service-connected disabilities may be considered as one disability ratable as 60 percent disabling under 38 C.F.R. § 3.16(a)(2) (2017). As such, the Veteran meets the requirements set forth in 38 C.F.R. § 3.16(a) for consideration of a TDIU. 

On review of all the evidence, lay and medical, the Board finds that the weight of the evidence is against finding that the Veteran is rendered unable to obtain (secure) or maintain (follow) substantially gainful employment as a result of the service-connected disabilities for the period from October 1, 2016 to April 11, 2017. The degree of occupational and functional impairment caused by the right shoulder 

disability and right shoulder scar has been analyzed in a combined schedular rating of at least 60 percent. Notably, no examiner has opined that the Veteran is unemployable. Specifically, while the September 2016 VA examiner assessed that the right shoulder disability impacted the ability to perform overhead work, the VA examiner did not opine that the Veteran is unemployable. Similarly, while the March 2017 VA examiner assessed that the right shoulder disability impacted employment due to shoulder pain, weakness, and instability, the March 2017 VA examiner did not opine that the Veteran was unemployable. Further, the March 2017 VA scars examination report reflects that the VA examiner opined that the right shoulder scar disability did not impact employment. 

Next, the May 2017 VA Form 21-8940 also reflects that the Veteran listed three years of college, employment with Bank of America 40 hours per week until approximately August 2008, a base salary of $96,000, and that the most he had ever earned in one year was $236,000, demonstrating substantially gainful employment though at least August 2008 and indicating a likely ability to work. In addition, the May 2017 VA Form 21-8940 reflects that the Veteran indicated he was unemployable due to the service-connected right shoulder disability and non-service-connected posttraumatic stress disorder (PTSD). Further, an SSA disability determination received by VA in June 2016 reflects that the Veteran was deemed disabled for SSA purposes in August 2008 based on a primary diagnosis of a (non-service connected) seizure disorder (epilepsy), as well as s secondary diagnosis of non-service-connected tumors of the head and neck, and did not include the service-connected right shoulder disability with residual scar. For these reasons, the Board finds that the weight of the evidence demonstrates that the criteria for TDIU have 

not been met or more nearly approximated for the period from October 1, 2016 to April 11, 2017. As the preponderance of the evidence is against this claim, the benefit of the doubt rule is not for application, and the Board must deny the claim. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 


ORDER

An increased disability rating for the service-connected right shoulder disability in excess of 60 percent, for the rating period from October 1, 2016 to April 11, 2017, is denied. 

A TDIU, for the rating period from October 1, 2016 to April 11, 2017, is denied. 





____________________________________________
J. Parker
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs