﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/21 Archive Date: 02/26/21

DOCKET NO. 190510-20691
DATE: February 26, 2021

ORDER

The appeal for a higher initial (compensable) disability rating for service connected bilateral hearing loss, having been withdrawn by the Veteran, is dismissed.

The appeal for an increased disability rating in excess of 10 percent for service connected Dequervain’s syndrome with arthritis of the left wrist, having been withdrawn by the Veteran, is dismissed.

The appeal for an increased disability rating in excess of 10 percent for service connected arthritis of the left thumb, having been withdrawn by the Veteran, is dismissed.

The appeal for service connection for a heart disorder, having been withdrawn by the Veteran, is dismissed.

New and relevant evidence having been received, reopening of service connection for systemic lupus erythematosus (lupus) is granted.

Service connection for lupus is granted.

Service connection for left shoulder degenerative arthritis is granted.

From June 26, 2017, a total disability rating for compensation purposes based on individual unemployability due to service-connected disabilities (TDIU) is granted.

FINDINGS OF FACT

1. On November 2, 2020, prior to the promulgation of a decision in the instant appeal, the Board of Veterans’ Appeals (Board) was informed, in person at a virtual Board hearing, that the issues of a higher initial (compensable) disability rating for service connected bilateral hearing loss, an increased disability rating in excess of 10 percent for service connected Dequervain’s syndrome with arthritis of the left wrist, an increased disability rating in excess of 10 percent for service connected arthritis of the left thumb, and service connection for a heart disorder were no longer being pursued on appeal.

2. A June 2013 rating decision denied service connection for lupus, finding no in service injury, disease, or event. The Veteran did not file a timely Notice of Disagreement (NOD) following the June 2009 rating decision, and new and material evidence was not received during the one year appeal period.

3. New evidence received since the June 2013 rating decision tends to prove the claim of service connection for lupus.

4. The Veteran is currently diagnosed with lupus.

5. During service the Veteran manifested symptoms commonly associated with lupus.

6. The Veteran experienced “continuous” symptoms of lupus since service separation.

7. The Veteran is currently diagnosed with degenerative arthritis of the left shoulder.

8. During service the Veteran complained of left shoulder pain symptoms.

9. The Veteran experienced “continuous” symptoms of degenerative arthritis of the left shoulder since service separation.

10. From June 26, 2017, the Veteran was unable to obtain or maintain substantially gainful employment as a result of service connected disabilities.

CONCLUSIONS OF LAW

1. The criteria for withdrawal of the issue of a higher initial (compensable) disability rating for service connected bilateral hearing loss by the Veteran have been met. 38 U.S.C. § 7105; 38 C.F.R. § 20.205.

2. The criteria for withdrawal of the issue of an increased disability rating in excess of 10 percent for service connected Dequervain’s syndrome with arthritis of the left wrist by the Veteran have been met. 38 U.S.C. § 7105; 38 C.F.R. § 20.205.

3. The criteria for withdrawal of the issue of an increased disability rating in excess of 10 percent for service connected arthritis of the left thumb by the Veteran have been met. 38 U.S.C. § 7105; 38 C.F.R. § 20.205.

4. The criteria for withdrawal of entitlement to service connection for a heart disorder by the Veteran have been met. 38 U.S.C. § 7105; 38 C.F.R. § 20.205.

5. The June 2013 rating decision that denied service connection for lupus became final. 38 U.S.C. § 7105; 38 C.F.R. § 20.1103.

6. As the evidence received subsequent to the June 2013 rating decision is new and relevant, the requirements to reopen service connection for lupus are met. 38 U.S.C. § 5108; 38 C.F.R. § 3.156(d).

7. Resolving reasonable doubt in the Veteran’s favor, the criteria for presumptive service connection for lupus have been met. 38 U.S.C. §§ 1101, 1112, 1131, 1133, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.326(a).

8. Resolving reasonable doubt in the Veteran’s favor, the criteria for presumptive service connection for degenerative arthritis of the left shoulder have been met. 38 U.S.C. §§ 1101, 1131, 1133, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.326(a).

9. Resolving reasonable doubt in the Veteran’s favor, from June 26, 2017, the criteria for a TDIU have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.340, 3.341, 4.15, 4.16, 4.18, 4.19, 4.25.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran, who is the appellant, had active service from November 1982 to November 1986. The Veteran also had service in the United States Naval Reserves.

The Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA), creates a new framework of review for veterans who disagree with VA’s decision on their claim.

The instant matter comes on appeal from multiple Department of Veterans Affairs (VA) Regional Office (RO) rating decisions. The Veteran appealed the decisions, and in March 2019 the RO issued multiple statements of the case (SOC) relevant to the issues on appeal. Subsequently, in May 2019, the Veteran submitted a VA Form 10182, which opted into the AMA framework. Per the AMA NOD, the Veteran requested the AMA Hearing Review lane for a reevaluation of the evidence considered by the Agency of Original Jurisdiction (AOJ). Under the AMA, when a claimant seeks appellate review through the Board’s hearing docket, the Board may consider the evidence of record at the time of the AOJ decision on appeal, additional evidence submitted on the date of the Board hearing (including testimony), and additional evidence submitted within 90 days of the hearing. Pub. Law 115-55 (Aug. 23, 2017), 131 Stat. 1114 (to be codified at 38 U.S.C. § 7113(b)).

The Veteran testified at a November 2020 virtual Board hearing before the undersigned Veterans Law Judge. The hearing transcript has been associated with the record.

1. Bilateral Hearing Loss Disability Rating

2. Left Wrist Disability Rating

3. Left Thumb Disability Rating

4. Service Connection for a Heart Disorder

Under 38 U.S.C. § 7105, the Board may dismiss any appeal that fails to allege a specific error of fact or law in the determination being appealed. A veteran may withdraw a substantive appeal by telling the Board of the decision to withdraw either in writing or on the record at a Board personal hearing. 38 C.F.R. § 20.205. On November 2, 2020, prior to the promulgation of a decision in the instant appeal, the Board was informed, in person at a virtual Board hearing, that the issues of a higher initial (compensable) disability rating for service connected bilateral hearing loss, an increased disability rating in excess of 10 percent for service connected Dequervain’s syndrome with arthritis of the left wrist, an increased disability rating in excess of 10 percent for service connected arthritis of the left thumb, and service connection for a heart disorder were no longer being pursued on appeal.

As the Veteran has withdrawn the appeal regarding these issues, there remain no allegations of errors of fact or law for appellate consideration. See 38 U.S.C. § 7104. Accordingly, the Board does not have jurisdiction to review these issues, and the issues of a higher initial (compensable) disability rating for service connected bilateral hearing loss, an increased disability rating in excess of 10 percent for service connected Dequervain’s syndrome with arthritis of the left wrist, an increased disability rating in excess of 10 percent for service connected arthritis of the left thumb, and service connection for a heart disorder will be dismissed.

5. New and Relevant Evidence to Reopen Service Connection for Lupus

A claimant may request re-adjudication of a previously denied claim, if new and relevant evidence is presented or secured. VA will readjudicate the claim taking into consideration all of the evidence of record. New evidence means existing evidence not previously submitted to agency decisionmakers. The term “relevant evidence” means evidence that tends to prove or disprove a matter in issue. The standard shall not be construed to impose a higher evidentiary threshold than the new and material evidence standard that was in effect prior to the date of the enactment of the Appeals Modernization Act. See 38 U.S.C. § 5108; Pub. L. No. 115-55.

A June 2013 rating decision denied service connection for lupus, finding no in service injury, disease, or event. The Veteran did not file a timely NOD following the June 2013 rating decision, and new and material evidence was not received during the one year appeal period. As such, the June 2009 RO rating decision became final. See 38 U.S.C. § 7105; 38 C.F.R. §§ 20.302, 20.1103.

During the 30-day evidence submission period following the November 2020 virtual Board hearing, the Veteran’s representative submitted medical articles discussing symptoms of lupus. Further, at the November 2020 virtual Board hearing, the Veteran offered testimony supporting that various lupus symptoms, to include joint problems, skin problems, and anemia, were present during service. Such evidence tends to prove the claim of service connection for lupus by establishing that lupus symptoms first manifested during service. Consequently, the Board finds that new and relevant evidence has been presented with respect to the claim for service connection for lupus, and the claim for service connection for lupus is reopened. 38 U.S.C. § 5108; 38 C.F.R. § 3.156(a).

At the November 2020 virtual Board hearing, the Veteran’s representative argued that readjudication of the June 2013 RO rating decision pursuant to 38 C.F.R. § 3.156(c) may be warranted based upon the receipt of service treatment records that were associated with the record following the issuance of the June 2013 rating decision. The Board understands the representative’s argument to be as follows. At the time of the June 2013 rating decision, the RO noted in the introduction that complete service treatment records for the period from November 1982 through November 1986 were unavailable, and a VA examiner in June 2013 found that available service treatment records did not support that the Veteran had lupus symptoms during service. As a review of the currently available service treatment records show that the Veteran did, in fact, have symptoms consistent with lupus during service, the logical assumption is that new service treatment records were associated with the record subsequent to the issuance of the June 2013 VA lupus examination and RO rating decision.

While sympathetic to the representative’s argument, a review of the record does not support that any new service treatment records were added to the file subsequent to June 2013. Review of the record reflects that in July 1992 the Veteran filed a claim for service connection. Per the claims file, in September 1992 VA received the Veteran’s service treatment records, which included records from the November 1982 through November 1986 period of active service. The subsequent February 1993 rating decision conveys that it was the Veteran who submitted the service treatment record copies; however, the records appeared to the RO to be full and complete.

In July 2011, VA received the Veteran’s original claim for service connection for lupus. Subsequently, in October 2011, VA contacted the appropriate records custodian and requested that they submit copies of the Veteran’s service treatment records. Per the record custodian response, at that time only the Veteran’s service entrance examination could be found (presumably because, per the above, the majority of the service treatment records had already been in the Veteran’s possession and were previously submitted in 1992). 

It appears that the RO’s notation in June 2013 that the service treatment records were incomplete was based upon the October 2011 record custodian report; however, as discussed above, the Veteran had already submitted service treatment records in September 1992, and per the RO in February 1993, the service treatment records appeared complete. Nothing in the record indicates that any new service treatment records were received by VA following the issuance of the June 2013 RO rating decision. To the extent the VA examiner missed certain relevant evidence in the service treatment records, this appears to be due to examiner error rather than the later addition of relevant service treatment records. For these reasons, the Board does not find 38 C.F.R. § 3.156(c) applicable to the instant decision.

Service Connection Law and Regulation

Service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. 

Arthritis and systemic lupus erythematosus are chronic diseases under 38 C.F.R. § 3.309(a). As such, the presumptive service connection provisions under 38 C.F.R. § 3.303(b) for service connection based on “chronic” symptoms in service and “continuous” symptoms since service are applicable to the instant matter. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Under 38 C.F.R. § 3.303(b), service connection will be presumed where there are either chronic symptoms shown in service or continuity of symptomatology since service for diseases identified as “chronic” in 38 C.F.R. § 3.309(a). Walker, 708 F.3d at 1338-40 (holding that continuity of symptomatology is an evidentiary tool to aid in the evaluation of whether a chronic disease existed in service or an applicable presumptive period). With a chronic disease shown as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. 38 C.F.R. § 3.303(b).

In addition, the law provides that, where a veteran served 90 days or more of active service, and a chronic disease become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1133, 1137; 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time.

Service connection may be granted for disability that is proximately due to or the result of a service-connected disability. An increase in severity of a non service connected disorder that is proximately due to or the result of a service connected disability, and not due to the natural progress of the non service connected condition, will be service connected. Aggravation will be established by determining the baseline level of severity of the non service connected condition and deducting that baseline level, as well as any increase due to the natural progress of the disease, from the current level. See 

38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439, 448 (1995).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

6. Service Connection for Lupus

The Veteran asserts that symptoms of lupus first manifested in service and have continued since service separation. Initially, the Board finds that the Veteran is currently diagnosed with lupus. Such diagnosis can be found in the June 2013 VA lupus examination report and elsewhere throughout the record.

Next, the Board finds that during service the Veteran manifested symptoms commonly associated with lupus. In November 2020, during the open evidentiary period, the Veteran’s representative submitted medical articles from the Lupus Foundation of America. Per the medical research, symptoms of lupus included anemia, skin problems (to include facial rashes), orthopedic/joint pain and swelling, and kidney problems.

Review of the service treatment records, to include records from the Veteran’s period of Reserve duty, reflect that the Veteran complained of, and sought treatment for, orthopedic/joint pain in December 1982, May 1983, August 1986, April 1988, and October 1991. As to the Veteran’s skin, the service treatment records reflect that the Veteran sought treatment for skin problems, to include facial rashes, in August 1983, October 1985, November 1985, December 1985, May 1986, June 1986, August 1986, and September 1986. Significantly, per a December 1982 service treatment record, the diagnosis was anemia. Per the medical literature, symptoms of anemia and facial rashes are strong indicators of lupus.

Having reviewed all the evidence of record, lay and medical, the Board finds that the evidence is at least in equipoise on the question of whether the Veteran experienced “continuous” symptoms since service separation of lupus to meet the requirements for presumptive service connection for the chronic disease of systemic lupus erythematosus. See 38 C.F.R. § 3.303(b).

Per an October 1987 private treatment record, it was noted that the Veteran had a history of anemia. Under family history, the private physician found it notable that the Veteran’s mother was diagnosed with lupus. A June 1988 private treatment record includes the opinion that the Veteran’s anemia may have been due to bleeding in the kidney. As discussed above, both anemia and kidney problems are strong indicators of lupus. Further, per a May 1999 VA treatment record, the Veteran underwent testing for lupus-like symptoms in 1990, but was apparently misdiagnosed with rheumatoid arthritis at that time.

The Veteran filed a service connection claim in July 1992. While the Veteran did not seek service connection for lupus, as a lupus diagnosis had not yet been rendered, the Board notes that the Veteran did seek service connection for pain in the neck, shoulders, arms, and hands, which is consistent with lupus. Subsequently, a VA examination was performed in October 1992. While the Veteran complained of having diffuse pain on the right side of the body in the neck, arm, forearm, and fingers that began in service, upon examination the findings were normal. Considering the medical literature, the Board finds this to be consistent with a history of joint pain due to lupus.

Years later, in July 2011, the Veteran filed a claim for service connection for lupus. In a subsequent October 2011 lay statement, the Veteran conveyed undergoing lupus testing in service after learning that her mother had been diagnosed with the disability. While the in-service test came back negative, the Veteran advanced that service physicians were still performing tests at the time of service separation. The Veteran stated that lupus was finally diagnosed by a VA Medical Center (VAMC) in 1996, and treatment for the disease began at that time.

A VA lupus examination was performed in June 2013. Per the examination report, the Veteran was diagnosed with lupus in 1996. The Veteran told the VA examiner that there had been a negative lupus test during service, but conveyed that she had been experiencing lupus symptoms similar to her mother’s during service. 

At the conclusion of the examination, the VA examiner opined it was less likely than not that the currently diagnosed lupus began in service, at least in part, because of the negative in-service lupus test; however, review of the record reflects that the Veteran has a history of false-negative lupus tests. Per an April 2005 VA treatment record, despite the Veteran having been diagnosed with, and treated for, lupus in 1996, an April 2005 VA lupus test came back negative. As the VA examiner did not address whether the in-service lupus test may have been a false-negative like the test performed by a VAMC in April 2005, the Board finds the opinion to be inadequate for VA rating purposes. As the instant decision grants service connection for lupus, remand for an addendum opinion is unnecessary at this time.

Review of the VA treatment records reflects that the Veteran continued to receive lupus treatment from 1996 to the present. 

The Veteran testified at a virtual Board hearing in November 2020. At that time, the Veteran’s representative correctly pointed out that service treatment records supported that the Veteran displayed symptoms commonly associated with lupus during service. The Veteran credibly testified that during service she was experiencing many of the same health symptoms as her mother, who had previously been diagnosed with lupus. The Veteran specifically testified to having symptoms of joint pain, anemia, and skin problems during service, which are all commonly associated with lupus. Further, the Veteran also credibly testified that, upon being formally diagnosed with lupus in 1996, the lupus symptoms at that time were the same symptoms being experienced from service separation until diagnosis. 

The Veteran is currently diagnosed with lupus. During service the Veteran sought treatment for symptoms commonly associated with lupus. Post-service treatment records support that the Veteran sought treatment for lupus-like symptoms from service separation until diagnosis in 1996. Throughout the course of this appeal, including in testimony at a November 2020 virtual Board hearing, the Veteran credibly testified to having lupus-like symptoms both during service and since service separation. This evidence is sufficient to place in equipoise the question of whether the Veteran experienced continuity of symptomatology of lupus symptoms, to include skin, joint, anemia, and kidney symptoms, since service separation that was later diagnosed as lupus. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) (a veteran is competent to testify regarding continuous joint pain since service); McCartt v. West, 12 Vet. App. 164, 167-68 (1999) (implying that alleged skin disorder of boils, blotches, rash, soreness, and itching since service is the type of condition lending itself to lay observation and satisfy the nexus requirement); Savage v. Gober, 10 Vet. App. 488, 497-98 (1997) (post-service testimony of an in-service fall that caused a limp since service is competent).

Resolving reasonable doubt in the Veteran’s favor, the there were lupus-like symptoms during service that were “continuous” since service separation of lupus. As such, the criteria for presumptive service connection for lupus under 38 C.F.R. § 3.303(b) based on “continuous” post service symptoms have been met. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. As service connection is being granted on a presumptive basis, there is no need to discuss entitlement to service connection on a direct or any other basis, as other theories of service connection have been rendered moot, leaving no question of law or fact to decide. See 38 U.S.C. § 7104.

7. Service Connection for a Left Shoulder Disorder

The Veteran asserts that a currently diagnosed left shoulder disorder is related to in-service treatment for left shoulder pain. In the alternative, it is argued that a left shoulder disorder was caused or aggravated by the service connected left wrist disability. It is the Veteran’s contention that symptoms of a left shoulder disorder have continued from service separation to the present.

Initially, the Board finds there is a current diagnosis of degenerative arthritis of the left shoulder. Specifically, the report from a left shoulder MRI in March 2019 showed degenerative changes in the left shoulder. 

Next, the Board finds that during service the Veteran complained of left shoulder pain symptoms. Per a December 1982 service treatment record, the Veteran complained of bilateral shoulder pain for several weeks. The Veteran also sought treatment for left shoulder pain in August 1985.

Having reviewed all the evidence of record, lay and medical, the Board finds that the evidence is at least in equipoise on the question of whether the Veteran experienced “continuous” symptoms since service separation of degenerative arthritis of the left shoulder to meet the requirements for presumptive service connection for the chronic disease of arthritis. See 38 C.F.R. § 3.303(b). 

While the service separation examination report from October 1986 is negative for any left shoulder disability symptoms, at the November 2020 virtual Board hearing, the Veteran credibly testified that pain symptoms in the left shoulder first manifested during infantry training while carrying a rifle on the left shoulder. Further, the Veteran credibly testified that these pain symptoms continued from service separation to the present.

There is other evidence of record consistent with a finding of continuous symptoms since service. Private treatment records reflect that the Veteran sought treatment for left shoulder disability symptoms immediately following service in October 1987, June 1988, and November 1990. While the October 1987 treatment was specifically for left shoulder pain that manifested following a post-service sprain of the shoulder, the October 1990 private treatment record reported that the Veteran’s left shoulder pain had been present for a long time. Considering the Veteran’s credible testimony in November 2020, the Board does not find that this 1987 left shoulder strain was clearly an intercurrent cause of the currently diagnosed degenerative arthritis. Rather, it appears that the post-service shoulder strain merely aggravated the already existing left shoulder pain that had been present since service.

VA treatment records reflect that the Veteran complained of, and/or sought treatment for, left shoulder pain in May 2000, March 2006, May 2017, August 2018, and April 2019. Further, at an August 2017 VA shoulder examination, the Veteran conveyed having pain in the left shoulder since on or about 1986 or 1987. The Board notes that the VA examiner in August 2017 did not render an opinion concerning whether a currently diagnosed left shoulder disorder was related to the in service complaints of left shoulder pain.

The Veteran is currently diagnosed with degenerative arthritis of the left shoulder. During service the Veteran sought treatment for left shoulder pain. At a November 2020 virtual Board hearing, the Veteran credibly testified to having left shoulder disability symptoms since service separation. VA and private treatment records reflect that the Veteran has complained of, and sought treatment for, left shoulder symptoms from service separation to the present. This evidence is sufficient to place in equipoise the question of whether the Veteran experienced continuity of symptomatology of a left shoulder disorder since service separation that was later diagnosed as degenerative arthritis of the left shoulder.

Resolving reasonable doubt in the Veteran’s favor, the Board finds that the Veteran had left shoulder disorder symptoms during service and experienced “continuous” symptoms since service separation of degenerative arthritis of the left shoulder. As such, the criteria for presumptive service connection for degenerative arthritis of the left shoulder under 38 C.F.R. § 3.303(b) based on “continuous” post service symptoms have been met. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. As service connection is being granted on a presumptive basis, there is no need to discuss entitlement to service connection on a direct, secondary, or any other basis, as other theories of service connection have been rendered moot, leaving no question of law or fact to decide. See 38 U.S.C. § 7104.

8. TDIU

Disability ratings are determined by applying the criteria set forth in VA’s Schedule for Rating Disabilities (Rating Schedule), which is based on the average impairment of earning capacity. 38 U.S.C. § 1155. Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. Total disability may or may not be permanent. 38 C.F.R. § 3.340(a)(1). Total ratings are authorized for any disability or combination of disabilities for which the Rating Schedule prescribes a 100 percent evaluation. 38 C.F.R. § 3.340(a)(2).

TDIU may be assigned when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. The service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue will be addressed in both instances. 38 C.F.R. § 4.16(a),(b).

If there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, with sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, 

(2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war. 38 C.F.R. § 4.16(a).

If a veteran’s disabilities do not meet the objective combined rating percentage criteria of 38 C.F.R. § 4.16(a), it then becomes necessary to consider whether the criteria for referral for extraschedular consideration are met under § 4.16(b) criteria. It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Submission to the Director, Compensation and Pension Service, for extraschedular consideration is warranted in all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in § 4.16(a). 38 C.F.R. § 4.16(b).

Individual unemployability must be determined without regard to any non service connected disabilities or a veteran’s advancing age. 38 C.F.R. §§ 3.341(a), 4.19; Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a veteran is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment, but the ultimate question is whether a veteran is capable of performing the physical and mental acts required by employment, not whether a veteran can find employment. Id. at 361. When reasonable doubt arises as to the degree of disability, such doubt will be resolved in a veteran’s favor. 38 C.F.R. § 4.3.

In Faust v. West, 13 Vet. App. 342 (2000), the United States Court of Appeals for Veterans Claims (Court) defined “substantially gainful employment” as an occupation that provides an annual income that exceeds the poverty threshold for one person, irrespective of the number of hours or days that a veteran actually works and without regard to a veteran’s earned annual income. In Hatlestad v. Derwinski, 5 Vet. App. 524, 529 (1993), the Court held that the central inquiry in determining whether a veteran is entitled to a TDIU is whether a veteran’s service connected disabilities alone are of sufficient severity to produce unemployability. The determination as to whether a total disability is appropriate should not be based solely upon demonstrated difficulty in obtaining employment in one particular field, which could also potentially be due to external bases such as economic factors, but rather to all reasonably available sources of employment under the circumstances. See Ferraro v. Derwinski, 1 Vet. App. 326, 331-332 (1991).

In evaluating a veteran’s employability, consideration may be given to the level of education, special training, and previous work experience in arriving at a conclusion, but not to age or impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

Marginal employment is not considered substantially gainful employment and generally is deemed to exist when a veteran’s earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist in certain cases when earned annual income exceeds the poverty threshold on a facts-found basis. Consideration shall be given in all claims to the nature of the employment and the reason for termination. 38 C.F.R. § 4.16(a). Marginal employment, odd-job employment, and employment at half the usual remuneration is not incompatible with a determination of unemployability if the restriction to securing or retaining better employment is due to disability. 38 C.F.R. § 4.17(a).

The ultimate issue of whether a TDIU should be awarded is not a medical issue, but rather is a determination for the adjudicator. See Moore v. Nicholson, 21 Vet. App. 211, 218 (2007) (ultimate question of whether a veteran is capable of substantial gainful employment is not a medical one; that determination is for the adjudicator), rev’d on other grounds sub nom, Moore v. Shinseki, 555 F.3d 1369 (Fed. Cir. 2009). Although VA must give full consideration, per 38 C.F.R. § 4.15, to “the effect of combinations of disability,” VA regulations place responsibility for the ultimate TDIU determination on VA, not a medical examiner’s opinion. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013); 38 C.F.R. § 4.16(a); see also Smith v. Shinseki, 647 F.3d 1380, 1385-86 (Fed. Cir. 2011) (VA is not required to obtain an industrial survey from a vocational expert before making a TDIU determination but may choose to do so in an appropriate case).

In this case, by virtue of the fact that the Board is granting service connection for lupus in the instant matter, the combined disability rating eligibility criteria for a TDIU under 38 C.F.R. § 4.16(a) have been met for the entire rating period on appeal, from June 26, 2017. From June 26, 2017, prior to the issuance of the instant decision, the Veteran was service connected for a total abdominal hysterectomy, rated as 30 percent disabling, left-wrist arthritis, left-thumb arthritis, and tinnitus, all rated as 10 percent disabling, and bilateral hearing loss and migraine headaches, both rated as noncompensable, for a total combined evaluation of 50 percent. 

In the instant decision the Board grants service connection for lupus. Per the report from a June 2013 VA lupus examination, the Veteran had more than three exacerbations per year of lupus that resulted in severe impairment of health, and the disease was treated constantly or near-constantly with an oral immunosuppressive medication. As such, the Board find that, upon the AOJ initially rating the now service-connected lupus, either under Diagnostic Code 6350 or by rating each residual individually, the Veteran will meet the schedular rating criteria for a TDIU pursuant to 38 C.F.R. § 4.16(a). For these reasons, the Board finds the question of a TDIU from June 26, 2017 ripe for adjudication.

On June 26, 2017, VA received a VA Form 21-8940, Veteran’s Application for Increased Compensation Based on Unemployability. Per the Form, the Veteran completed training as a certified nursing assistant (CNA) in 1972, and worked as a CNA until June 2011, when she was no longer able to work due to service connected left-wrist and lupus symptoms.

At the time of the June 2013 VA lupus examination, under functional impairment, the VA examiner specifically noted that the Veteran worked as a nurse’s aid until 2011, when she retired due to pain and fatigue preventing completion of the various job responsibilities. 

The Veteran received a VA wrist examination in July 2017. Per the examination report, as to physical activity, the VA examiner found that the service-connected left wrist disability would limit physical employment involving lifting heavy objects of 25 pounds or greater. The Board notes that a CNA would regularly be expected to lift more than 25 pounds, such as when a patient needed to be moved. As to sedentary employment, it was noted that jobs involving writing or typing would require frequent breaks to minimize pain associated with repeated use of the left wrist. Further, the report from an August 2017 VA examination of the now service connected left shoulder also found that the Veteran is unable to lift heavy objects.

At the November 2020 virtual Board hearing, the Veteran credibly testified to retiring from CNA work in 2011 at the age of 60 and being awarded Social Security Administration (SSA) disability benefits due to lupus symptoms. Specifically, the Veteran testified that the orthopedic pain was too severe to continue working. 

During the course of this appeal VA received the Veteran’s SSA records. The SSA records reflect that the Veteran was found too disabled to work due to the now service connected lupus symptoms and “other unspecified arthropathies”, which presumably include the service-connected left wrist, left thumb, and left shoulder. Per the May 2013 SSA administrative decision, the evidence supported that the Veteran had been too disabled to work since February 2011. Upon reviewing the evidence of record, which included private, VA, and SSA examinations and treatment records, it was found that the Veteran was unable to perform any past work, to include work as a CNA, due to lupus and other orthopedic symptoms. Specifically, it was found that the demands of the Veteran’s CNA work exceeded residual functional capacity. Additionally, the Veteran’s current job skills were not found to be transferable to other employment. Further, when considering the Veteran’s education, work experience, and residual functional capacity, it was held that there were no jobs in the national economy that could be performed by the Veteran.

Having reviewed all the evidence of record, lay and medical, the Board finds that, from June 26, 2017, the date of claim for a TDIU, which was received more than one year after the Veteran medically retired in June 2011 (see 38 C.F.R. § 4.400), the Veteran has been unable to obtain or maintain substantially gainful employment as a result of service connected disabilities; specifically, lupus and the other service connected orthopedic disabilities. Per the Veteran’s testimony, various VA examination reports, and the SSA records, the Veteran medically retired from employment as a CNA in June 2011. The evidence reflects that the lupus and other orthopedic disability symptoms, pain in particular, prevented the Veteran from performing all her CNA responsibilities. Further, SSA specifically found that the Veteran’s previously job skills were not transferable to any other position, and the evidence of record indicates that the service-connected disability symptoms would prevent the Veteran from receiving appropriate vocational training. Even if the Veteran could receive the necessary training to obtain a new vocation, the evidence reflects that the lupus and orthopedic pain symptoms would prevent the Veteran from maintaining substantially gainful employment.

For the above reasons, and resolving reasonable doubt in favor of the Veteran, the Board finds that service-connected disabilities, specifically the Veteran’s lupus symptoms and pain related to the various service-connected orthopedic disabilities, prevent the Veteran from obtaining or maintaining substantially gainful employment. For these reasons, the Board finds that a TDIU is warranted from June 26, 2017, the date of claim for a TDIU. 38 C.F.R. §§ 3.340, 3.341, 4.16.

 

 

J. PARKER

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Blowers, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.